UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PORTO PAVINO, LLC., | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 18-14596 |
| v. | : | **OPINION** |
| LEGACY COLD STORAGE, LLC, et al. | : | |
| Defendants. | : | |

This matter comes before the Court on Motion to Dismiss Plaintiff's Claim for Punitive Damages by Third Party Defendant Ohio Security Insurance Company ("Ohio Security") [Dkt. No. 30], improperly designated as Liberty Mutual Insurance Company, and Third Party Defendant Ohio Security's Motion for Partial Summary Judgment [Dkt. No. 46]. The Court has considered the parties' written submissions pursuant to Fed. R. Civ. P. 78 (b). For the reasons stated below, the Court will grant in part and deny in part Ohio Security's Motion for Partial Summary Judgment [Dkt. No. 46], and grant Ohio Security's Motion to Dismiss [Dkt. No. 30].

I. Background

Plaintiff, Porto Pavino, LLC ("Plaintiff" or "Porto Pavino"), "engages in the business of purchasing and selling food products, including fresh fruit, produce, chestnuts, among other products." [Dkt. No. 16 ¶ 2]. Defendants, Legacy Cold Storage, BK Trucking Co., Inc., and Brian Kargman (collectively "Warehouse Defendants" or "Legacy"), owned and operated a cold storage warehouse in Vineland, New Jersey [Id. at ¶ 16; Dkt. No. 13 ¶ 16] where Plaintiff stored certain quantities of its products [Dkt. No. 13 ¶ 17].

Legacy's insurance broker, Defendant Worldwide Insurance Associates, LLC ("Worldwide") obtained an insurance policy for Legacy from Third Party Defendant Ohio Security, a subsidiary of Liberty Mutual. [Dkt. No. 16 ¶¶ 14-17]. Ohio Security admits that it "issued commercial general liability and commercial property insurance coverage to named insured Legacy Cold Storage under policy no. BKS 18 58 32 77 81 for the period September 7, 2017 to September 7, 2018." [Dkt. No. 46-2 ¶ 15]. This policy covered the Vineland location where Plaintiff's goods were stored during the policy period. [Dkt. No. 16 ¶¶ 14-17]. Worldwide issued a Certificate of Liability Insurance to Plaintiff, informing the Plaintiff that this policy was in place. [Dkt. No. 51-5, Ex. A].

Plaintiff currently claims that it "delivered goods to Legacy to store at its warehouse and the goods were not returned to Porto Pavino or its order in the same like good order and condition. [Dkt. No. 26 ¶ 28; Dkt. No. 46-4, Ex. A]. Plaintiff retained a consultant to investigate the damages to its goods. According to the consultant, HDMI Marine, Plaintiff's fruit was in fact stored by Legacy, where it was damaged due to "prolonged exposure to sub-freezing temperature." [Dkt. No. 46-5, Ex. B, HDI Marine Report at 2-3]. Plaintiff submitted a claim for these losses to Legacy by letter dated July 18, 2018, demanding payment for Legacy's "improper storage and care of Porto Pavino's fresh fruit." (Id.).

Legacy reported Plaintiff's claim to Ohio Security. On August 21, 2018, Ohio Security advised Legacy that its policy would not cover the liability. According to Ohio Security, the "care, custody or control" exclusion precluded coverage of "Porto Pavino's claim that Legacy Cold Storage is responsible for damage to Porto Pavino's fresh fruit caused by . . . improper storage and handling of that fruit at Legacy Cold Storage warehouse." (Id. at ¶ 19); [Dkt. No. 46-7, Ex. D].

On October 3, 2018, Plaintiff filed a Complaint against the Warehouse Defendants alleging inter alia that, during storage, they failed "to safeguard and/or account for all of Plaintiff's goods, resulting in the loss or destruction of the goods and failure to redeliver to Plaintiff the same amount of goods as was delivered to Warehouse Defendants, causing Plaintiff financial loss." [Dkt. No. 1 ¶ 24]. Plaintiff also brought claims against Worldwide alleging that Worldwide failed to secure proper or customary liability coverage for Legacy. [Dkt. No. 1, Counts VII, VIII, IX]. Legacy answered Plaintiff's complaint and initiated a Third Party Complaint against Ohio Security for defense and indemnity under its CGL policy [Dkt. No. 13], as well as a crossclaim against Worldwide. [Dkt. No. 17, Cross Claim].

Plaintiff subsequently filed a Crossclaim/Third Party Claim against Ohio Security for first party coverage under the CGL policy (COUNT I), and third-party coverage (COUNT II), requesting punitive damages. [Dkt. No. 16]. The Third Party Complaint alleges that Porto Pavino was an additional insured under the CGL policy, which covered Porto Pavino's property. (Id. at ¶¶ 18-21). According to Plaintiff, no exclusions warranted a denial of coverage. (Id. at ¶ 30). Plaintiff's Count II in particular, seeks declaration that Ohio Security is obligated to pay Porto Pavino for all sums Legacy becomes liable for. (Id.) Additionally, Count II seeks a declaration that Ohio Security acted in bad faith by denying third-party coverage. (Id.).

Initially, Ohio Security filed a Motion to Dismiss Plaintiff's claim for punitive damages. [Dkt. No. 30]. It subsequently filed a Motion for Partial Summary Judgment against both Plaintiff and Legacy [Dkt. No. 46] seeking dismissal of claims for liability coverage as well as Porto Pavino's claims for bad faith. The summary judgment motion

will inform the Court's analysis of the Motion to Dismiss, therefore, the Court will address the Motion for Partial Summary Judgment first.

## II. Partial Summary Judgment Motion

### A. Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.;

Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B. Analysis**

Ohio Security moves for partial summary judgment to dismiss Porto Pavino's third-party liability and bad faith claims, as well as Legacy's liability claim. [Dkt. No. 46]. Ohio Security argues that these claims should be dismissed as a matter of law pursuant to the CGL policy and that, regardless, Plaintiff has no standing to bring its third-party claims under Count II. (Id.). In opposition, Plaintiff and Legacy submit that summary judgment is premature as discovery is still ongoing, and even if it was not premature, there is a genuine factual dispute over liability. In addition, Plaintiff claims that it has standing to bring its third party claims as an additional insured under the CGL policy. [Dkt. No. 52 at 2; Dkt. No. 51 at 6-7].

*1. Additional Discovery*

"The court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." Dowling v. City of Philadelphia, 855 F.2d 136, 139 (3d Cir. 1988) (citations omitted). Accordingly, "[i]f a nonmovant shows by affidavit or declaration that, for <u>specified reasons</u>, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. Pro. 56(d) (emphasis added).

At the time the parties filed oppositions to the present motion, they had not conducted any depositions but exchanged documents. [Dkt. No. 51 at 1; Dkt. No. 52 at 2; Dkt. No. 54 at 7]. As to liability coverage, Ohio Security submits that summary judgment is not premature and claims for liability coverage must be dismissed as a matter of law because the CGL policy explicitly excludes any "property damage" to "personal property in the care, custody or control of the insured." [Dkt. No. 46 at 11]. According to Ohio Security, Porto Pavino and Legacy (for purposes of this section, "Plaintiffs") fail to provide information showing "additional discovery would preclude summary judgment on the basis of applying [this] unambiguous exclusion . . . to the undisputed facts." [Dkt. No. 54 at 8 n.2].

Here, the undisputed facts in this case provide that Legacy's insurance broker obtained a commercial general liability insurance policy from Ohio Security (the CGL), which covered the Vineland location. Porto Pavino stored its produce products with Legacy in its Vineland cold storage facility, where it was allegedly damaged. It is also undisputed that Legacy's CGL policy contains the property "exclusion" Ohio Security identifies. [<u>See</u> Dkt. No. 46-2 ¶ 17 and the parties responses thereto]. Specifically, the

CGL policy lists property damage to "[p]ersonal property in the care, custody or control of the insured," under coverage exclusions. [Dkt. No. 46-4, Ex. C, OSIC000182). Property damage is defined as:

- **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it

(Id. at OSIC000193 to OSIC000194)

To that end, Ohio Security submits that the language of the CGL policy is clear and unambiguous as to the exclusion of property in the care, custody, or control of the insured. Plaintiffs', however, point to two other provisions in the policy. Legacy argues that Section C of the "Building and personal Property Coverage Form" provides that personal property of others is actually covered. That subsection explicitly states, under "Coverage, Covered Property":

- **c. Personal Property of Others** that is:

    (1) In your care, custody or control; and

    (2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

    However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

(Id. at OSIC000246-57). In addition, the CGL Extension form, which "modifies insurance provided under the . . . Commercial General Liability Coverage Part," provides a provision for "Additional Insureds." (Id. at OSIC000205). Under that provision,

7

> Such person or organization is an additional insured but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by:
>
> **a.** Your acts or omissions, or the acts or omissions of those acting on your behalf, in the performance of your on going operations for the additional insured that are the subject of the written contract or written agreement . . . .

(<u>Id.</u> at OSIC000207 (emphasis added)).

Ohio Security contends that these other provisions in the CGL policy have no bearing on liability coverage. According to Ohio Security, neither provision precludes application of the care, custody, or control exclusion. [Dkt. No. 54 at 9]. Additionally, even an additional insured would only be entitled to liability coverage for claims or suits against it, subject to the policy's other terms and conditions. (<u>Id.</u>).

Plaintiffs, however, claim that this case concerns more than an interpretation of the written policy and assert that additional discovery through depositions are necessary to oppose summary judgment. More specifically, Porto Pavino asserts that depositions regarding "[Ohio Security]'s intent and purpose will be central to interpreting the contract for insurance that it entered into." [Dkt. No. 51 at 7]. According to Plaintiffs, the issue of liability is two-fold. In addition to liability under the policy as written, they allege that Ohio Security's liability further depends on: (1) whether Ohio Security issued the policy that was requested of it; and (2) whether the issued policy was appropriate. [Dkt. No. 52 at 2; Dkt. No. 51 at 7].

Generally, "[w]hen interpreting an insurance policy, courts should give the policy's words 'their plain, ordinary meaning.'" <u>President v. Jenkins</u>, 853 A.2d 247, 254 (N.J. 2004) (citation omitted). But New Jersey courts "have [also] recognized the importance of construing contracts of insurance to reflect the reasonable expectations of

8

the insured in the face of ambiguous language and phrasing, and in exceptional circumstances, when the literal meaning of the policy is plain." Doto v. Russo, 659 A.2d 1371, 1376–77 (N.J. 1995). This reasonable expectations doctrine has been applied "to vindicate the insured's reasonable expectations over the policy's literal meaning 'if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.'" Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 163 A.3d 353, 359 (N.J. Super. App. Div. 2017) (quoting Zacarias v. Allstate Ins. Co., 775 A.2d 1262 (N.J. 2001)).

In support of applying the "unambiguous" exclusion clause at this juncture, Ohio Security relies on the Third Circuit's decision in Federick Mutal Insurance Co. v. Hall, 752 F. App'x 115, 119 (3d Cir. 2018). There, however, the Third Circuit concluded that the insured did not initially apply for the specific coverage he was claiming he expected before the court. In fact, the type coverage the insured "expected" was "simply not the kind of coverage insurance agents and insurance companies expect to provide unless the insured explicitly requests such coverage." Id. Therefore, the reasonable expectations doctrine was not applicable. Id.

Courts may interpret unambiguous contracts "contrary to its plain meaning so as to fulfill the reasonable expectations of the insured." Werner Indus., Inc. v. First State Ins. Co., 548 A.2d 188, 191 (N.J. 1988). This holds true, particularly, in circumstances where the insurer shaped a different understanding on the insured's part and the policy provides inadequate coverage. Id.; DiOrio v. N.J. Mfrs. Ins. Co., 398 A.2d 1274 (N.J. 1979). Here, Plaintiffs dispute the adequacy of the CGL policy issued and contend that

the insured's expectations of that policy, may play a role in the Court's analysis of liability coverage. The Court agrees.

The developed record before the Court contains some "facts regarding the insurer's knowledge of the facility and the operation that it was insuring and its underwriting process." [Dkt. No. 51 at 7]. Particularly, the emails produced between Worldwide's representative and Ohio Security's suggest that (1) Ohio Security was aware that Legacy is a refrigerated warehouse, and (2) that Ohio Security and the insurance broker may have intended to cover damage to the property of others, or at least cover "spoilage" for the property of others. [Dkt. No. 51-7, Ex. C; Dkt. No. 51-8, Ex. D]. But Porto Pavino's declaration states that the documents produced still fail to provide the following essential information: whether Ohio Security issued the policy that Worldwide Insurance requested of it, whether it issued an appropriate policy under the circumstances, and what it's intent was as to the policy that was to be obtained. [Dkt. No. 51 at 7; Dkt. No. 51-2 at ¶ 4]. Specifically, Plaintiffs believe additional discovery could reveal that the insurance broker, Worldwide Insurance, "request[ed] the proper insurance coverage from Ohio, but Ohio itself actually provided the incorrect policy." [Dkt. No. 52 at 2].

This information sufficiently supports that additional discovery could reveal further facts as to the intentions and expectations of the party. Porto Pavino fails, however, to specify how any further discovery would preclude summary judgment on its claims for third-party liability coverage and bad faith[1] based on its ability to directly sue Ohio

---

[1] No discovery has commenced with regard to bad faith against Ohio Security. Pursuant to the Honorable Judge Joel Schneider's Order [Dkt. No. 32], such discovery is stayed pending further Order of the Court. For the reasons below, Plaintiff fails to establish genuine factual issue over whether it has standing to bring a bad faith claim against Ohio Security, therefore, the

Security. There is no evidence that the standing issue will turn on any of the additional information requested. Accordingly, at this time the Court will deny Ohio Security's Motion for Summary Judgment only as to Legacy's Third Party Complaint seeking defense and indemnification under the CFG policy.

   2. *Porto Pavino's Standing*

Ohio Security also moves for summary judgment arguing that "Plaintiff lacks standing to assert its claims for declaratory relief and bad faith regarding liability coverage issued to Legacy Cold Storage" [[Dkt. No. 46 at 7]. In opposition, Plaintiff submits that it maintains standing to sue as an additional insured under Legacy's CGL policy. [Dkt. No. 51 at 8].

The CGL policy states under Section IV - Commercial General Liability Conditions, subsection 3a, that: "No person or organization has a right under this Coverage Part . . . [t]o join us as a party or otherwise bring us into a 'suit' asking for damages from an insured." It further provides:

> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Accordingly, by its express terms the CGL policy forecloses Plaintiff's third-party action against it, absent settlement or judgment.

To be sure, this language is consistent with the general rule, "that an injured person possesses no direct cause of action against the insurer of the tortfeasor prior to

---

Court finds it is unnecessary to address whether summary judgment on Plaintiff's bad faith claims, for substantive reasons, is premature.

11

recovery of judgment against the latter." President v. Jenkins, 814 A.2d 1173, 1187 (N.J. Super. Ct. App. Div. 2003) ( citing Cruz-Mendez v. ISU/Ins. Servs., 722 A.2d 515 (N.J. 1999)) ("[g]enerally, plaintiffs in tort actions may not directly sue insurers.").

Nonetheless, Plaintiff contends that as an additional insured, rather than a third-party, New Jersey law actually permits Plaintiff's direct claim. Ohio Security claims that even if Plaintiff is considered an "additional insured" under the policy, there still has no standing to assert <u>direct</u> actions against it for the alleged tortfeasor. [Dkt. No. 54 at 1]. The Court Agrees with Ohio Security.

First, Plaintiff's status as an additional insured on the CGL policy is based solely on its "Certificate of Lability Insurance," which Legacy's insurance broker, Worldwide, issued to Porto Pavino (the "Certificate"). [Dkt. No. 51-5 ("Ex. A")]. Notably, the Certificate, conspicuously states:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT . . . AMEND OR EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. . . . THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

(Id.) It simply certifies that the policy of insurance listed, the CGL policy, was in fact issued to Legacy for the period indicated. In addition, the Certificate provides that "[t]he insurance afforded is subject to all the terms exclusions and conditions of such policies." (Id.).

In considering the circumstances presently before the court, two cases are particularly instructive. First, the New Jersey District Court case Colony Ins. Co. v. Troensa Constr., Inc., where a sub-contractor claimed additional insured status through a nearly identical certificate of insurance. The one-page certificate was issued by the

insured's insurance broker and contained the same disclaimer as the certificate at issue here, stating that it was issued "as a matter of information only and confer[ed] no rights upon the certificate holder." Id. There, the Court noted "the purpose of non-insurer certificates are informational—to let parties know the insured has coverage." Id. (citing Scottsdale Insurance Co. v. Somerville Fidelco Assocs., LP, No. 07-2763, 2010 WL 624891, at *3 (D.N.J. Feb. 22, 2010)).

The New Jersey Superior Court Appellate Division also "considered a strikingly similar certificate to the one at issue," as noted by Colony. In Selective Ins. Co. v. Hospicomm, Inc., a general contractor appealed, inter alia, an order "denying it a defense by . . . its subcontractor's CGL carrier, Valley Forge Insurance Company, for certain claims . . . arising out of property damage." No. A-0485-12T1, 2014 WL 4722776, at *7 (N.J. Super. Ct. App. Div. Sept. 24, 2014). The general contractor claimed it was an additional insured and covered under the policy. In support, the general contractor provided it's certificate of insurance. After review of the certificate, the court ruled that "although the certificate lists the [relevant] CGL policy and states that '[the general contractors] are Additional Insureds under the General Liability coverage for liability arising out of the Named Insured's operations,' the certificate expressly confers no rights on its holder." Id.

Plaintiff in this case presents a certificate of insurance like those presented in the cases cited above. As in those cases, although the Certificate names Porto Pavino an "additional insured as required by written contract," it does not provide the Plaintiff

13

different rights under the CGL policy.[2] Here the policy terms state that Ohio Security "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage."' Therefore, even as an additional insured, Plaintiff fails to show that it has rights under the policy to assert claims against Ohio Security for Legacy.

In arguing to the contrary, Plaintiff cites to two New Jersey cases, <u>Avemco Ins. Co. v. United States Fire Ins. Co.</u>, 513 A.2d 962 (N.J. Super. Ct. App. Div. 1986), and <u>Cypress Point Condo. Assn. v. Adria Towers, LLC</u>, 143 A.3d 273 (N.J. 2016). The Court finds both cases distinguishable from the present action. In <u>Avemco</u>, following a tragic airplane crash, the estates of two individuals on board demanded that the insurer of the plane <u>defend and indemnify them</u> as additional insureds under the policy issued to the plane's owner. <u>Avemco</u>, 513 A.2d at 964. Here, Plaintiff does not seek to have Ohio Security defend and/or indemnify it under Legacy's policy for claims asserted against them. To the contrary, Porto Pavino seeks declaratory judgment that Ohio Security has an obligation to Legacy for the claims Plaintiff asserts against them, and that Ohio acted in bad faith when it denied Legacy's claim.

Plaintiff in <u>Cypress</u>, a Condominium Association, filed suit against the condo developer and other subcontractors for alleged property damage to its resident units caused by water infiltration. <u>Cypress</u>, 143 A.3d at 277. The developer subsequently requested that its insurer, Evanston, defend and indemnify it against the Association's claims. When the developer "failed to file a declaratory judgment action against

---

[2] <u>See</u> <u>Taylor v. Kinsella</u>, 742 F.2d 709, 711 (2d Cir. 1984) ("As a general rule, where a certificate or endorsement states expressly that it is subject to the terms and conditions of the policy, the language of the policy controls.").

Evanston, the Association filed an amended complaint, seeking a determination whether its claims against the developer were covered by Evanston's CGL policies." Id. Here, the insured, Legacy, has already filed a third party complaint against Ohio Security. Moreover, the court did not address the Association's status under the policy.

Accordingly, Plaintiff fails to present a dispute as to whether it may sustain claims for third party liability against Ohio Security and thus, the Court will dismiss Porto Pavino's Crossclaim under Count II against the Third Party Defendant.

### III. Motion to Dismiss

#### A. Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to

---

[1] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). Accord Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).

state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

---

[2]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Analysis**

"[P]unitive damages are awarded as punishment or deterrence for particularly egregious conduct." Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1230 (N.J. 1984) (citations omitted). For a punitive damages award, a Plaintiff must show "that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J. Stat. Ann. § 2A:15-5.12.

Ohio Security argues that Plaintiff's claim for punitive damages should be dismissed because Plaintiff fails to allege any facts that Ohio Security acted with wanton or willful disregard for anyone, or that its claim denial was motivated by actual malice. The Court agrees.

Here, Plaintiff's remaining claim against Ohio Security for first party coverage under Count I requests an award for punitive damages. [Dkt. No. 16 ¶¶ 48-50]. Plaintiff submits that its Third Party Complaint sufficiently supports an award based on egregious and wonton willful disregard by Ohio Security because it shows that Ohio Security denied Porto Pavino first party coverage in contravention of the terms of the policy and insurance agent's understanding of the policy.

Plaintiff's Third Party Complaint alleges that Ohio Security's "denial of first party coverage to Porto Pavino was wrongful, improper and without a good faith basis, and in contravention of its fiduciary duties." [Dkt. No. 16 ¶ 49]. Ohio Security's denial, attached thereto, states that it denied the coverage claim pursuant to the property of others exclusion in the policy. [Dkt. No. 16, Ex. D]. The Third Party Complaint, however, provides that "no exclusions under the policy []would warrant [Ohio Security's] denial of first party or third party [claims]." [Dkt. No. 16 at ¶ 23]. It further alleges that the insurance broker who obtained the CG: policy, stated that the insurer's underwriter "confirmed that it was the intent of the [Ohio Security] underwriters to cover the property of others for spoilage on the property policy." (Id. at ¶ 23).

The New Jersey Supreme Court has held that "absent egregious circumstances, no right to recover for . . . punitive damages exists for an insurer's allegedly wrongful refusal to pay a first-party claim." Pickett v. Lloyd's, 621 A.2d 445, 455 (N.J. 1993); Accordingly, "punitive damages are [also] not permitted based on the alleged bad faith breach on the part of an insurer." Haardt v. Farmer's Mut. Fire Ins. Co. of Salem Cty., 796 F. Supp. 804, 811 (D.N.J. 1992). Therefore, here, even if the Third Party complaint supports the inference that Ohio Security's denial was wrongful or in bad faith, the

18

allegation do not support Plaintiff's conclusion that denying liability on the basis that the policy did not cover damage to property of others was egregious conduct.

Accepting all factual allegations as true, the Third Party Complaint is insufficient to state a claim for punitive damages, thus, the Court will grant Ohio Security's Motion to Dismiss.

IV. Conclusion

For the forgoing reasons, Ohio Security's Motion for Partial Summary Judgment will be granted in part and denied in part, and its Motion to Dismiss will be granted.

An appropriate order shall issue.

Dated: March 18, 2020

           ___s/ Joseph H. Rodriguez_____
           Hon. Joseph H. Rodriguez,
           UNITED STATES DISTRICT JUDGE